J. CHRISTOPHER JORGENSEN, ESQ.
STATE BAR NO. 5382
DIANA S. ERB, ESQ.
STATE BAR NO. 10580
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169
(702) 949-8200
(702) 949-8398/fax

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

CONNIE W. KWOK,

                    Plaintiff,

vs.

RECONTRUST COMPANY, N.A.; BANK OF
AMERICA; BAC HOME LOANS
SERVICING, LP; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.; COUNTRYWIDE HOME LOANS,
INC.,

                    Defendants.

Case:  2:10-cv-00215-RCJ-RJJ

**MOTION TO DISMISS**

Defendants ReconTrust Company, N.A. ("ReconTrust"), Bank of America ("BOA"),

Countrywide Home Loans, Inc. ("CHL"), Mortgage Electronic Registration Systems, Inc.

("MERS") and BAC Home Loans Servicing, LP ("BAC") (collectively "Defendants"), through

their attorneys, Lewis and Roca LLP, submit the following Motion to Dismiss. This Motion is

based on the pleadings and papers on file herein, the Request for Judicial Notice being filed

contemporaneously with this Motion and the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff Connie Kwok ("Plaintiff" or "Kwok") has failed to pay her mortgage. As a direct

result of this failure, foreclosure proceedings were started by Defendants. Plaintiff seeks to avoid a

pending foreclosure sale. The original loan was recorded in March of 2006. Plaintiff stopped

making regular payments on her loan in May of 2008. After waiting more than three years

following receipt and use of the loan proceeds, Plaintiff has now decided that no one should have

loaned her the money. Plaintiff's complaint is one of numerous lawsuits recently filed which are designed to stall a non-judicial foreclosure sale.[1] The complaint is no different than the dozens of others which this court has summarily dismissed over the past several months.

As discussed below, Plaintiff's complaint fails to state a claim upon which relief can be granted and is based on duties that do not exist under Nevada law. Plaintiff's complaint should be dismissed. No foreclosure would exist if Plaintiff had made her promised mortgage payments.

## II.  STATEMENT OF FACTS

### *Plaintiff Borrowed $420,000 from CHL and Secured the Loans with Deeds of Trust*

In March of 2005, Kwok purchased the property located at 6817 Woodland Vase Court, Las Vegas NV 89131-1771, Parcel No. 125-10-512-013. (*See* Complaint, pages 1-3, Grant Bargain Sale Deed and Property Records attached as Exhibits E and F to the contemporaneously filed Request for Judicial Notice.)

In March of 2006, Kwok applied to CHL for a loan against the property. Plaintiff encumbered the property by taking out two loans from CHL, a first mortgage in the amount of $375,000 and a Home Equity Line Of Credit ("HELOC") in the amount of $45,000. Plaintiff secured the loans with Deeds of Trust in favor of CHL. (*See* Deeds of Trust attached as Exhibit A and C to Request for Judicial Notice.)  The Deeds of Trust allow the beneficiaries, or their nominees, to implement foreclosure proceedings should Plaintiff default under the terms of the loans. *Id.*

### *Plaintiff Kwok Stopped Making Payments in May of 2008—As A Result, Defendants Began Foreclosure Proceedings on the Deed of Trust*

Plaintiff does not dispute that she stopped making her mortgage payments. As a result of her failure to pay, a Notice of Default and Election to Sell was recorded on September 10, 2008. (*See* Property Records, Instrument No. 2008091000002955 attached as Exhibit E to Request for Judicial Notice.) ReconTrust was substituted as trustee on September 16, 2008. (*Id.*, Instrument No. 2008091000002955.) When Kwok did not cure her deficiency, Notices of Trustee Sale were

---

[1] This is Plaintiff's Second Lawsuit. Her first lawsuit, case 2:09-cv-02298-RLH-LRL, which is identical in nearly every way to this lawsuit, is currently waiting for a court decision on a similar Motion to Dismiss.

1    recorded on 3/13/09, 8/11/09 and 10/19/09. (*Id.*, Instrument No. 200903130003214,

2    200908110002080, 200910190000486.)

3          Although Kwok has not tendered the amounts necessary to cure her deficiency, no

4    foreclosure sale has actually occurred to date. (*Id.*) As explained below, Plaintiff's entire

5    complaint must be viewed as merely an attempt to avoid the consequences of her default by

6    diverting and shifting the responsibility of her own failure to pay her debt.

7    ***Plaintiff Filed an Improper Complaint Over Three Years After Executing the Loan Documents***

8          After enjoying the proceeds of the loans for over three years—and only after the property

9    was noticed to go to auction—Plaintiff filed her complaint on November 4, 2009. She also

10   recorded a lis pendens on the property. (*See* Property Records, p. 1, Instrument No.

11   200911040000461.)

12         Plaintiff's claims fail as a matter of law or are barred by the applicable statute of

13   limitations. In addition, the complaint also fails to plead sufficient factual allegations to establish

14   claims against the Defendants.  In summary, Plaintiff's causes of action fail to state a claim for

15   relief as follows:

16   **(1) Misrepresentation and Fraud; (5) Conspiracy to Commit Fraud; (8) Conspiracy to**
     **Commit Fraud Related to MERS System; and (9) Fraud by Obtaining Signatures by**
17   **False Pretences.** Plaintiff's fraud claims are not pled with the particularity required by
     FRCP 9(b). Plaintiff makes generalized allegations about the mortgage industry, but fails
18   to include averments to time, place, manner, content, and identity of persons allegedly
     committing a specific fraud against Plaintiff. In addition, MERS' relationship as nominee
19   beneficiary, along with its right to institute foreclosure proceedings is clearly disclosed in
     the deed of trust Plaintiff herself signed. Significantly, Plaintiff has no explanation for her
20   signature attesting that she received all of the required disclosures under the law. Plaintiff
     received the loan that she signed for.
21

22   **(2)  Quiet Title**. It is impossible for Plaintiff to sue for quiet title when she admits that she
     encumbered the property and has not made any of her required mortgage payments. She
23   does not come to the court with clean hands

24   **(3) and (4) Breach of Duty of Good Faith Dealing.**  Plaintiff's claim for breach of the
     implied covenant of good faith and fair dealing fails *as a matter of law* because Plaintiff
25   neglects to plead that a special relationship or fiduciary duty existed between her and
     Countrywide. Nor does one exist. Even assuming Plaintiff alleged such facts, her claim
26   still fails because all of Plaintiff's alleged breaches occurred prior to any contract between
     Countywide and Plaintiff.
27

28   **(6)  Civil RICO.**  Plaintiff references the RICO statues, but does not come anywhere close
     to providing the detail in pleading that is required by those sale statutes.  Specifically,
     Plaintiff fails to allege an "indictable" offence.  Plaintiff is required to allege a crime.

**(7) Unjust Enrichment**.  Unjust enrichment is not an available remedy where there is a valid, enforceable contract. Plaintiff does not plead civil conspiracy to defraud with the particularity required by FRCP 9(b).

**(10) and (11)  Injunctive Relief and Declaratory Relief**.  Plaintiff's injunctive relief claim fails because she cannot show a likelihood of success where each of her claims fails as a matter of law. Further, Plaintiff is not entitled to equitable relief when she has not submitted a bond or paid her mortgage.

In light of these deficiencies, Plaintiff's complaint fails to state any legally cognizable claims against the Defendants. The complaint should therefore be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to FRCP 9(b) for lack of specificity. To do otherwise would allow Plaintiff to avoid her contractual obligations and to continue to keep a property for which she has not paid.

## III.  LEGAL ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes this Court to dismiss the complaint for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a complaint must be pled showing plaintiff's entitlement to relief. This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[2] Factual allegations must be enough to raise a claim above the speculative level.[3] When faced with a motion to dismiss, the court must accept the well-pleaded factual allegations of the complaint as true, and reasonable inferences must be drawn in the plaintiff's favor.[4]

However, only "fair" inferences arising from the pleading must be accepted by the court.[5] Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss.[6] The court is not required to accept as true allegations that are merely conclusory, "unwarranted deductions of fact, or unreasonable

---

[2] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1664-66 (2007) (internal quotations omitted); *see also*, *Ashcroft v. Iqbal*, 566 U.S. ___ (2009).
[3] *Id.* (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §1216, at 235-36 (3d ed. 2004)).
[4] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).
[5] *Simpson v. Mars, Inc.*, 929 P.2d 966, 967 (Nev. 1997).
[6] *See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1   inferences."[7] Courts will not assume the truth of legal conclusions merely because she is cast in

2   the form of factual allegations,[8] and will not assume that plaintiff "can prove facts which [she has]

3   not alleged, or that the defendants have violated . . . laws in ways that have not been alleged."[9]

4     A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or

5   on the absence of sufficient facts alleged under a cognizable legal theory.[10] When the defense of

6   the statute of limitations appears on the face of the Complaint, a motion to dismiss for failure to

7   state a claim is proper.[11]

8     Plaintiff is required to give Defendants notice of the nature and basis of her claims. The

9   complaint falls far short of even Nevada's liberal notice pleading standard because it fails to give

10   Defendants fair notice of the nature and basis of Plaintiff's claims and fails to make allegations

11   sufficient to establish the elements of the causes of action she asserts. Plaintiff's complaint should

12   therefore be dismissed pursuant to FRCP 12(b)(6).

13   **B.**   **Plaintiff's Various Claims for Fraud Fail Because They Are Not Pled With
   Particularity As Required By FRCP 9(b) And Are Generally Barred by the Statute of
14   Limitations**

15     When fraud is alleged, F.R.C.P. 9(b), provides that all "circumstances constituting the

16   fraud… shall be stated with particularity."[12]   Averments of fraud must be specific enough to put a

17   defendant on notice of the particular misconduct the defendant is alleged to have committed so

18   that the defendant can properly defend against the allegations.[13] A plaintiff is required to plead

19   facts as to **time**, **place** and **substance of the fraud**, specifically detail the defendant's allegedly

20   **wrongful acts**, including **when** they occurred and **who** engaged in the misconduct. *See, e.g.*

21   *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *In re GlenFed, Inc. Securities Litigation*, 42

22

23

_____

24   [7] *Sprewell*, 266 F.3d at 988.
     [8] *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *accord Western Mining
25   Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).
     [9] *Associated Gen.l Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.
26   Ct. 897 (1983).
     [10] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
27   699 (9th Cir. 1988).
     [11] *Kellar v. Snowden*, 87 Nev. 488, 489 P.2d 90 (1971).
28   [12] *See* F.R.C.P. 9(b).  *See also, Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706 (9th Cir.), cert den., 528
     U.S. 1019 (1999).
     [13] *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

1    F.3d 1541, 1547-49 (9th Cir. 1994); *Arndt v. Prudential Bache Securities, Inc.*, 603 F. Supp. 674,

2    676 (S.D. Cal. 1984).[14]

3          Plaintiff alleges several types of fraud (misrepresentation, omission, conspiracy to commit

4    fraud, conspiracy to commit fraud related to the MERS system, and fraud by obtaining signature

5    by false pretenses). However, Plaintiff's allegations are not much more than editorial statements

6    of opinion as to the problems of the mortgage and lending industry as a whole. (Complaint ¶¶10-

7    23, 91-103.)[15]  Plaintiff further alleges that unspecified actors misrepresented loan terms and/or to

8    misrepresent Plaintiff's qualification for the loans. *Id.*

9          Plaintiff's allegations fall far short of the particularity required by Rule 9(b):

10
11       •    <u>Time</u>. Plaintiff does not provide any information regarding the time of Defendants' alleged misrepresentations

12       •    <u>Place</u>. Plaintiff does not provide any information as to the place of each
13             Defendant's supposed misrepresentations.  Plaintiff can point to nothing in writing that supports her contention of misrepresentation. In fact, the plain language of the deed of trust contradicts Plaintiff's allegations that MERS' relationship to the
14             transaction was concealed from her.

15       •    <u>Manner</u>. Plaintiff does not provide any information as to the manner of each Defendant's supposed misrepresentations.  Plaintiff does not include any affidavits
16             or other type of evidentiary support for her assertion.

17       •    <u>Content</u>. Plaintiff's misrepresentation claim is so deficient that Plaintiff does not even state the context for any statements, let alone why such statements were false.
18             Under Rule 9(b), Plaintiff cannot simply provide general descriptions of supposedly false information, as Kwok does in her complaint.

19
20   [14] F.R.C.P. 9(f) further provides that "for purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." *See, Linnabery*
21   *v. DePauw,* 695 F. Supp. 411, 412 (C.D. Ill. 1988); *Cook v. Kuljian Corp.,* 137 F. Supp. 833 (E.D. Pa. 1956).  The purpose of this requirement is to permit the defending party to frame an adequate answer
22   raising applicable defenses based on the statute of limitation and other principles of law. *See, Pentz v. Downey,* 110 F. Supp. 642, 644 (E.D. Pa. 1953).

23   [15] Without providing any supporting legal authority, Plaintiff's Opposition repeatedly cites to the alleged securitization of their loan as the basis for her claims.  Plaintiff has latched on to the idea that
24   someone else (secondary market investors, insurance companies, or perhaps the federal government) has already paid off her obligation, and in the process relieved her of the need to make her mortgage payments.
25   As explained in defendant's motion to dismiss, whether or not Plaintiff's loan is sold, transferred, or securitized has no bearing on Plaintiff's obligations under the Note.  Plaintiff specifically acknowledged
26   and agreed that that the originating lender could transfer its interest in the Note.  Further, how a mortgage payment is distributed by the servicer on behalf of the beneficiary is irrelevant once Plaintiff's mortgage
27   account is credited with the amounts paid by Plaintiff.  Plaintiff has provided no authority that the mere act of securitizing a loan provides a basis for any cause of action in Nevada.

28       All of Plaintiff's claims based on the illegality or impropriety of securitization--essentially *all* of Plaintiff's claims--are unsupported and should be dismissed.

- <u>Identity</u>.  Plaintiff does not identify which Defendant, named or unnamed, made the statements that Plaintiff allegedly relied upon.

Plaintiff does not provide sufficient notice to Defendants as to the nature and basis of her claims for fraud.  From the complaint, it is unclear whether Plaintiff is making allegations against one Defendant, all Defendants, or every entity involved in the lending industry, whether named or not.

Nothing in Plaintiff's fraud allegation is factually or legally relevant.  That Defendants sold the loan is without relevance, as Plaintiff expressly agreed that the loan could be sold. The promissory note signed by Plaintiff specifically states: "I understand that Lender may transfer this Note." (*See* Promissory Note, ¶1, attached as Exhibit B to the Request for Judicial Notice).

Even if this Court were to accept Plaintiff's "particulars" as to time and place, the broad contentions are not enough for this defendant to determine what in the documents specifically Plaintiff found fraudulent. Aside from the alleged securitization provisions, which were entirely permissible by law, Plaintiff provides no example of any provision of the loan documents, deed of trust or note that is misleading. Plaintiff received the mortgage three years ago. Plaintiff agreed to the sale or transfer of the Note and deed, without limitation. The calculations for Plaintiff's payment amount are expressly put forth both in the Note and contemporaneous disclosures concerning the Note.  (See Request for Judicial Notice).  Plaintiff qualified for, and received an Adjustable Rate Note. In sum, Plaintiff received what she bargained for.

Thus, Plaintiff's claims for fraud fail, even under the notice pleading standard. Under the heightened pleading standard that is applicable pursuant to Rule 9(b), the complaint falls far short of stating claims for fraud.

**(a)     Plaintiff's Claim for Civil Conspiracy to Defraud Fails Because It Is Not Pled With The Requisite Particularity**

A civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intended to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." [16]

---

[16] *Consol. Generator-Nevada, Inc. v. Cummings Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

To state a claim for civil conspiracy, "the complaint must allege: 1) the formation and operation of the conspiracy; 2) the wrongful act or acts done pursuant thereto; and 3) the damage resulting from such act or acts."[17] The plaintiff must allege that defendants had a "purpose to harm," meaning an intentionally injurious act without justification, or an act done to benefit the defendants with the necessary consequence of public prejudice or the oppression of individuals. *Id.*

When a plaintiff alleges conspiracy to defraud, the complaint must meet the particularity standards of Rule 9(b), and must inform each defendant of her actions that constituted joining the conspiracy.[18] The complaint must specify the manner in which each defendant joined and how it participated in the conspiracy.[19]

Plaintiff's complaint fails to identify any concerted action engaged in between two or more persons or entities. While the complaint alleges bad acts, it is devoid of allegations identifying a *concerted* wrongful act engaged in by any of the Defendants together with some other party to specifically damage Plaintiff. Plaintiff fails to provide any allegations leading to a reasonable inference that any of the Defendants engaged in any wrongful act with any other party to this case. As such, the complaint fails to give Defendants proper notice of the conspiracy claim against them, thus preventing them from being able to adequately respond to the complaint.

In order to properly plead a claim for civil conspiracy, plaintiff must allege a concerted wrongful act engaged in by more than one party. Plaintiff must also allege that the conspirators engaged in the concerted act with an intent to harm Plaintiff. Because Plaintiff has failed to plead facts to support these elements, her claim for civil conspiracy must be dismissed.

**C.    Plaintiff's Quiet Title Claim Contradicts Plaintiff's Admission That She Borrowed Money and Secured the Loan with a Deed of Trust**

Even if Plaintiff's other claims did not fail, Quieting Title is not a proper remedy for this action. "A quiet title action requests a judicial determination of all adverse claims to disputed

---

[17] *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1532, n.3 (D. Nev. 1989).
[18] *Graziose v. American Home Products Corp.*, 202 F.R.D 638, 642 (D. Nev. 2001); *see also, Wasco Prod, Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006); *Hartford Life Insurance Co. v. Banks* , 2009 WL 863267, at *4-5 (S.D. Cal. 2009).
[19] *Arroyo v. Wheat*, 591 F. Supp. 141, 143 (D. Nev. 1984).

property." 65 Am Jur 2d Quieting Title and Determination of Adverse Claims §1 "The very object of the proceeding assumes that there are other claimants adverse to the plaintiff, setting up titles and interests in the land or other subject-matter hostile to her [own]."[20] Where such adverse claims exist, the party seeking to have another party's right to property extinguished, bears the burden of overcoming the "presumption in favor of the record titleholder."[21]

Here, Plaintiff admits that she borrowed the money to purchase the property, and then secured the loan with a Deed of Trust in favor of CHL. (Complaint, pages 1-4.)  Plaintiff does not allege that she paid off the loan.

Plaintiff's Deed of Trust describes MERS' role as beneficiary, as nominee, for the originating lender and its successors and assigns, and ReconTrust's role as substitute trustee. There is no other party claiming any interest in any of the Plaintiff's property that is adverse to Plaintiff's title and/or the subject Deed of Trust. Plaintiff's dislike for the Deeds of Trust she signed does not create an adverse claim that entitles her to an order quieting title.

The only way this quiet title action would be necessary is if there were presently a dispute between two or more parties over the right to foreclose under Plaintiff's Deeds of Trust. Plaintiff does not assert that more than one entity claims the right to foreclose on the Deeds of Trust, so Plaintiff's claim to quiet title has no merit.

As such, this Court should reject Plaintiff's attempt to eliminate the Deeds of Trust and obtain a windfall from the loans. This Court should further relieve the Defendants from having to further defend against this meritless claim by dismissing this claim.

**D.     Breach of Good Faith and Fair Dealing**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law because Plaintiff neglects to plead that a special relationship or fiduciary duty existed between her and CHL,[22] nor does one exist. Even assuming Plaintiff alleged such facts, her

---

[20] *See Clay v. Scheeline Banking & Trust Co.,* 40 Nev. 9, 16, 159 P. 1081, 1082 (1916).

[21] *See Breliant v. Preferred Equitie*33 *See Clay v. Scheeline Banking & Trust Co.,* 40 Nev. 9, 16, 159 P. 1081, 1082 (1916). *See Breliant v. Preferred s Corp.,* 112 Nev. 663, 669, 918 P.2d 314, 318 (1996).

[22] Plaintiff attempts to circumvent the pleading of a fiduciary duty by designating her cause of action as a contractual breach of the covenant of good faith and fair dealing.  However, Plaintiff pleads punitive and exemplary damages pursuant to NRS 42.005 which are only available to a Plaintiff in a breach not arising from a contract.  See NRS 42.005(1). Thus, Plaintiff's claim is really a tort based breach which requires the pleading of a fiduciary relationship.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

1    claim would still fail because all of Plaintiff's alleged breaches occurred prior to any contract

2    between CHL and Plaintiff.

3        **1.       No Fiduciary Duty Exists between CHL and Plaintiff**

4            In order to establish a claim for tortious breach of the implied covenant of good faith and

5    fair dealing, Plaintiff must establish the following elements: (1) Kwok and CHL entered into a

6    contract; (2) CHL owed a duty of good faith to Kwok arising from the contract; (3) a special

7    element of reliance or fiduciary duty existed between Kwok and CHL where CHL was in an

8    entrusted or superior position and was intimately involved in the loan enterprise; (4) CHL

9    breached the duty of good faith, by engaging in misconduct; and (5) Kwok suffered damages.

10   *Great American Insurance Company v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 257 (1997).

11   In a tort action, breach of the implied covenant of good faith and fair dealing arises only "in rare

12   and exceptional cases" when a special relationship exists between the tortfeasor and the victim.

13   *See Ins. Co. of the W. v. Gibson Title Co.*, 122 Nev. ____, ____,134 P.3d 698, 702 (2006).  A

14   special relationship is characterized by elements of public interest, adhesion, reliance, and

15   fiduciary responsibility. *Id.*  A special relationship generally exists between insurers and insureds,

16   franchisers and franchisees, and partners of partnerships.  *Id.* It is also possible for a special

17   relationship to exist between an employer and an employee. *See State, Univ. & Cmty. Coll. Sys. v.*

18   *Sutton*, 120 Nev. 972, 103 P.3d 8 (2004); *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364

19   (1987).

20           "Tort liability for breach of the good faith covenant is appropriate [only] where the party

21   the superior or entrusted position has engaged in grievous and perfidious misconduct."  *See Great*

22   *Am. Ins. Co. v. General Builders, Inc.,* 113 Nev. 346, 354-555, 934 P.2d 257, 263 (1997) (internal

23   quotations omitted).  In such situations, ordinary contract damages may not be sufficient to "make

24   the aggrieved, weaker, trusting party whole, and to fully punish the tortfeasor for his misdeeds."

25   *Id.* (internal quotations omitted).

26           Plaintiff does not set forth any allegations making even a rudimentary showing of agency,

27   nor does she plead any facts that would satisfy the elements of a special relationship or fiduciary

28   duty. Plaintiff's claim fails as a matter of law because, making every possible inference in

Plaintiff's favor, the complaint alleges nothing more than Defendant was Plaintiff's lender. Lenders do not owe their borrowers fiduciary duties. Further, Plaintiff does not identify in what capacity the Defendants owe this purported fiduciary duty.

While the Nevada Supreme Court has not ruled on the issue of whether a creditor owes a fiduciary duty to a debtor, the United States District Court for the District of Nevada considered the issue in *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, predicting that the Nevada Supreme Court would hold that a lender does not owe a fiduciary duty.[23]  The result in *Yerington Ford* is consistent with the holdings of many courts in sister jurisdictions.[24]  Absent exceptional circumstances, the existence of which is not even pled in the Complaint, the Defendants did not owe Plaintiff any fiduciary duty. Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

### 2.    All of Plaintiff's Alleged Breaches Occur Prior to the Contract

Plaintiff's second claim for relief fails as a matter of law because Plaintiff fails to allege that any special relationship existed between herself and CHL. More importantly, Plaintiff's claim fails because no special relationship exists between a borrower and lender.[25] Even assuming that Plaintiff's claim is a garden variety contract breach of the covenant of good faith and fair dealing claim, which it is not, her second claim for relief still fails because Plaintiff fails to allege the existence of a valid contract that gives rise to the *pre-contract duties* which Plaintiff asserts Defendants violated. All of Plaintiff's allegations refer to omissions and violations that occurred *before* Plaintiff closed on her promissory notes and Deed of Trust, or *pre-contract*, so the implied covenant of good faith and fair dealing did not yet exist or apply.  Plaintiff alleges that CHL should have known that the loan application and other loan documents were fraudulently

[23] *See Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F.Supp.2d 1075, 1090 (D.Nev. 2004) ("the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship *is not fiduciary in nature*, absent exceptional circumstances") (emphasis added).

[24] *See, e.g., Oaks Management Corp. v. The Superior Court of San Diego County*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr. 561, 570 (2006) ("it is established that absent special circumstances not present here a loan transaction is at arms-length and *there is no fiduciary relationship between the borrower and lender*")(emphasis added); *See also AM Cosmetics, Inc. v. Solomon*, 67 F.Supp.2d 312, 320 (S.D.N.Y. 1999) (interpreting New York law); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F.Supp. 1437, 1443 (S.D.Fla. 1995) (applying Florida law); *GE Capital Mortg. Services, Inc. v. Pinnacle Mortg.*, 897 F.Supp. 854, 863 (applying Pennsylvania law); *Stewart v. Machias Sav. Bank*, 762 A.2d 44, 46 (Me. 2000).

[25] See Orders Recently Entered by Judge Mahan, Judge Sandoval, and Judge Hunt finding no special relationship exists between CHL and Borrowers attached as Exhibit L to the Request for Judicial Notice.

1    submitted by the other defendants on behalf of Plaintiff and that the documents contained one or

2    more material facts about Plaintiff that was erroneous, and/or omitted known factual information

3    about Plaintiff, and/or was obtained in a commercially unreasonable manner.

4        Each of these alleged breaches, even if taken as true, occurred prior to the contract being

5    entered into between the parties--the closing of the loans.  The implied covenant of good faith and

6    fair dealing arises *after* a contract is formed.[26]   The Second Circuit addressed whether a contract,

7    upon formation, gives rise to any implied *pre-contract* duties, when it held that "an implied

8    covenant relates *only* to the performance of obligations under an [existing] contract, and *not* to any

9    *pre-contract* conduct."[27]  "We therefore affirm dismissal of this claim on the ground that the

10   implied covenant of good faith and fair dealing does not apply to any of the pre-contract conduct

11   on which the claim was based."[28]  The holding in *Independent Order of Foresters* is consistent

12   with Nevada law.[29]

13       The actions Plaintiff complains of under her claim for breach of the implied covenant of

14   good faith and fair dealing, all occurred pre-contract, so that claim should be dismissed as a matter

15   of law.  In addition, Plaintiff does not allege circumstances that would give rise to a special

16   relationship between her and CHL. The implied covenant of good faith and fair dealing is simply

17   not a source of liability for Plaintiff.

18   **E.    Plaintiff Fails To State A Proper Claim Under RICO Statues**

19       Plaintiff references the RICO statues, but does not come anywhere close to providing the

20   detail in pleading that is required by those sale statutes.  Specifically, Plaintiff fails to allege an

21   "indictable" offence.  Plaintiff is required to allege a crime.  Here, Plaintiff would like the court to

22   find that a crime was committed, but no specific, identifiable, crime is alleged.  It appears

23   Plaintiff's intent in this cause of action is to request declaratory relief or injunctive relief to stop

24   the foreclosure process.

---

[26] *See A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 914, 734 P.2d 9, 9 (1989) ("NRS 104.1203
specifically provides that: '[e]very contract or duty within this chapter imposes an obligation of good faith
in its performance or enforcement.'")
[27] *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998)
(emphasis added.)
[28] *Id.*
[29] See, *Velasquez v. HSBC Mortgage Services*, 2009 U.S. Dist. LEXIS 68473 (D. Nev. July 24, 2009);  *See*
also Request for Judicial Notice, recent court decisions, Exhibit L).

1    The pleading elements of a RICO cause of action are:"(1) conduct (2) of an enterprise (3)

2    through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property. "

3    *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 USC section 1964(c)). A plaintiff

4    asserting a RICO claim must meet a higher pleading standard than an ordinary plaintiff.

5    Specifically, a RICO plaintiff must plead the facts constituting the predicate offenses with the

6    particularity required by FRCP 9(b) for fraud claims. *Moore v. Kayport Package Exp., Inc*., 885

7    F.2d 531, 541 (9th Cir. 1989). FRCP 9(b) requires that the plaintiff state the time, place and

8    specific manner of commission of the RICO predicative acts and the role of each defendant in

9    each predicate act.. *Id. Occupational-Urgent Care Health Systems, Inc. v. Sutro & Co., Inc.,* 711

10   F.Supp. 1016, 1020 (E.D. Cal. 1989);

11   In this case, Plaintiff fails to meet the higher pleading standard because she cannot

12   establish the "conduct" element of RICO. RICO predicate acts must be among the felonies

13   enumerated as "racketeering activity" pursuant to 18 USC section 1996(1). See, *Kahre v. Damm*,

14   2007 US Dist. LEXIS 95978, 25-26 (D. Nev. 2007).

15   Causation lies at the heart of a civil RICO claim. A plaintiff must show that the

16   defendant's alleged misconduct proximately caused the injury. *Polus v. Caesars World, Inc*. 379

17   F.3d 654, 664-665 (9 th Cir. 2004).

18   Further, a civil RICO pleading must, in that portion of the pleading which describes the

19   criminal acts that the defendant is charged to have committed, contain a sufficiently plain, concise

20   and definite statement of the essential facts such that it would provide a person of ordinary

21   understanding with notice of the charges. *Siragusa v. Brown*, 114 Nev. 1384, 1396 Nev. 1998).

22   To satisfy the definition of a pattern of racketeering activity, a mere showing of two

23   criminal predicate acts would not suffice. Rather, the plaintiff must show both "relationship" and

24   "continuity". The racketeering predicate crimes must be related, and they must either constitute or

25   threaten long-term criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 US 229,

26   106 L.Ed. 2nd 195, 109 S.Ct. 2893 (1989).

27

28

Plaintiff's complaint contains none of the information mentioned above specific to stating a valid RICO claim against defendants. Plaintiff fails to provide the causational link between any criminal act of a defendant and the damages claimed.

Instead, Plaintiff vaguely alleges only undesirable conduct in a summary manner. Plaintiff does not provide any facts describing a pattern of criminal activity by defendants.  Plaintiff also fail to sufficiently describe an "injury" and certainly fail to establish a causational link between a act and an injury involving defendants.

Accordingly the RICO claims made by Plaintiff should be dismissed.

**F.**     **Unjust Enrichment is Not An Available Remedy Where There is a Valid, Enforceable Written Contract**

Plaintiff's unjust enrichment claim fails because the transaction upon which Plaintiff bases her complaint is premised upon written agreements (i.e. promissory note and deed of trust). Under Nevada law, a party may not maintain a claim for unjust enrichment where a valid and enforceable contract exists.[30] Unjust enrichment is a theory for recovery where an agreement is implied. "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract, but where the person sought to be charged is in possession of money or property which, in good conscience and justice, she should not retain but should deliver to another [or should pay for]."[31] It is axiomatic that "no agreement can be implied when there is an express agreement."[32] The Nevada Supreme Court has further held that "[t]o permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles."[33] Accordingly, Plaintiff's claim for unjust enrichment should be dismissed.

---

[30] *See Leasepartners Corp. v. Brooks Trust*, 113 Nev. 747, 755-56, 942 P.2d 182, 187 (1997) ("[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract.") (emphasis added).
[31] *See Leasepartners*, 113 Nev. at 756, 942 P.2d at 187 (quoting 66 Am. Jur. 2d *Restitution* § 11 (1973).
[32] *Id.*
[33] *See Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824 (1977); *see also Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1197 (D. Nev. 2006) (holding that plaintiff could not state a claim for unjust enrichment where a written contract existed between the parties).

**G.     Injunctive and Declaratory Relief**

Injunctive relief is a remedy, not a cause of action.[34]  To the extend that Plaintiff attempts to raise injunctive relief as a cause of action, such cause of action should be dismissed for failure to state a claim upon which relief may be granted.  The court should therefore dismiss this claim.

Similarly, there is no independent cause of action under the Declaratory Judgment Act.[35] As this "claim" does not state a separate and independent ground for relief, the Court should dismiss the cause of action.

The basis of Plaintiff's complaint appears to be centered on a belief that the default and subsequent foreclosure proceedings were somehow flawed, and therefore any further foreclosure activity on the property should be enjoined. To succeed in a claim seeking injunctive and declaratory relief for wrongful foreclosure, the plaintiff must show that (1) defendant exercised a power of sale or foreclosed on plaintiff's property; and, (2) at the time the power of sale was exercised, there was no breach of condition or failure of performance by plaintiff that would have authorized the foreclosure or exercise of power of sale.[36]  Plaintiff's complaint fails under this exact definition—the power of sale has not been exercised in this case. In addition, Plaintiff cannot show that she has not breached or failed to perform her part of the contract. Additionally, since Plaintiff has not tendered payment as required in this case, she lacks standing to maintain her claim for injunctive or declaratory relief, and injunctive relief, fraud, and quiet title.

---

[34] *See, e.g., In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007) (claim for injunctive relief" was "not a separate cause of action" and "not an independent ground for relief"); see also *Mamo v. BP P.L.C.*, No. 05-1323, 2006 WL 269056, at *3 (E.D. Va. Jan. 30, 2006) ("[I]njunctive relief is not a separate cause of action. To the extent that plaintiff attempts to raise injunctive relief as a cause of action, such cause of action should be dismissed for failure to state a claim upon which relief may be granted.") *Noah v. Enesco Corp.*, 911 F.Supp. 305, 307 (N.D. Ill. 1995) (injunctive relief is a remedy, not an independent cause of action).
[35] *Akins v. Penobscot Nation*, 130 F.3d 482 (1st Cir. 1997); *Johnson v. D&D Home Loans Corp.*, 2007 WL 4355278 (E.D. Va. Dec. 6, 2007) (declaratory relief is a "remedy available  . . . and not a separate cause of action").
[36] *Collins v. Union Federal Savings and Loan Association*, 99 Nev. 284, 662 P.2d 610 (1983).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

**H.    All of Plaintiff's Causes of Action are Foundationally Flawed**

The cornerstone of Plaintiff's complaint is that MERS and its agents do not have standing to initiate a non-judicial foreclosure on the Plaintiff's property. Using "cookie cutter" allegations gleaned from other similarly-situated plaintiffs, Kwok attacks the mortgage industry, alleging that MERS' status as nominee of the beneficiary is the result of a conspiracy among lenders, bankers, and the mortgage industry.  This misconception, and the legal inaccuracy of MERS' alleged lack of standing to foreclose, infects all of Plaintiff's causes of action equally and fatally.  MERS has standing to foreclose on Plaintiff's loan under long-standing and well-established Nevada law. This court as recently as October 26, 2009 explained at length why MERS has standing to foreclose. (See *Gomez v. Countrywide Home Loans, Inc. et al.* Case No.:2:09-cv-01489-RCJ-LRL Order on Motion to Dismiss attached to the Request for Judicial Notice as Exhibit L.)[37]

Moreover, Plaintiff lacks standing even to bring a lawsuit to enjoin or prevent any future foreclosure, as she has not made, or even alleged, a full tender of the amount due on the loan, and has not made a payment on the loan for almost three years.  Nevada law forbids this action from proceeding.

**1.    The Original Note is Not Required**

In Nevada, a lender is not required to show the borrower the original note before it can begin nonjudicial foreclosure proceedings. Plaintiff's reliance on extra-jurisdictional cases requiring the Note and Deed be presented for a party to have standing to file a complaint for a *judicial* foreclosure is misplaced

As Judge Robert C. Jones of this jurisdiction stated in *Ernestberg*, "Plaintiff fails to convince the Court why the holding [in an Ohio judicial foreclosure case] is applicable here. . . . Nevada law articulates the procedures by which a nonjudicial foreclosure may be conducted, which Defendant's followed in relation to Plaintiff's Loan and Deed of Trust." *Ernestberg*, 2009 WL 160241.

---

[37] "Oftentimes, the argument the mortgagor/trustor makes is not clear. **But one thing is clear: so long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is simply no defect in foreclosure, at least in states such as Nevada where a trustee may foreclose non-judicially."**

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

Similarly, in California, another non-judicial foreclosure state, "an 'allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid.'" *Id.* (quoting *Neal v. Juarez*, 2007 WL 2140640 (S.D. Cal. July 23, 2007)(citing *R.G. Hamilton Corp. v. Corum*, 218 Cal. 92, 97, 21 P.2d 413 (1933) and *California Trust Co. v. Smead Inv. Co.*, 6 Cal.App.2d 432, 435, 44 P.2d 624 (1935) and relying on *Commercial Standard Ins. Co. v. Tab Constr., Inc.*, 94 Nev. 536, 583 P.2d 449, 451 (1978)(stating that Nevada Courts often look to California law where Nevada law is silent)).

Here, Plaintiff admittedly failed to make her mortgage payments. Because she is in default, Defendants were entitled to begin nonjudicial foreclosure proceedings under the terms of the Deed of Trust that Plaintiff signed. Nothing in NRS 107.80 requires a lender to produce the original note before proceeding. Accordingly, Plaintiff's claims based on a purported failure to produce the original note, including wrongful foreclosure, quiet title, and injunctive relief, should be dismissed.

## 2.   MERS Has Legal Authority To "Enforce The Note" And Initiate "Foreclosure Proceedings" Under Nevada Law

Plaintiff's entire complaint is premised, and necessarily dependent, on the legal argument that MERS lacks standing to foreclose on her mortgage.  Plaintiff's proposition is contrary to applicable Nevada legal authority.

As set forth by the complaint, and the recorded Deeds of Trust, the beneficiary is MERS, CHL is the lender, and ReconTrust Company, N.A. is the foreclosure trustee.  Any future action taken by those entities with regard to foreclosure is explicitly authorized by the applicable Nevada law and the Deeds of Trust.

## 3.   Securitization Does Not Relieve Plaintiff's Obligation To Pay

Plaintiff seeks a free house. The court has repeatedly rejected the suggestion by plaintiffs that somehow they are no longer required to pay back their loan once ownership or servicing of the loan has been transferred. Recently, in *Cervantes v. Countrywide Home Loans*, 2009 U. S. Dist. LEXIS 87997, the court held:

[T]he Court fails to see how the MERS system commits a fraud upon Plaintiffs.  Plaintiffs' argument that MERS is a "sham" beneficiary is unconvincing.  Otherwise, any situation

where a beneficiary obtains less than the full rights possessed by the entity or person granting the beneficiary status would likewise result in a "sham" beneficiary.  The fact that MERS does not obtain such rights as to collect mortgage payments or obtain legal title to the property in the event of non payment does not transform MERS status into a "sham"

Plaintiff's second objection to the MERS system similarly has no effect upon their status as borrowers.  The original mortgage between the borrower and the lender, which lists MERS as the beneficiary, is recorded in the public land records.  Subsequent sales of the mortgage, so long as they involve MERS members, are not recorded in the public records but, rather, are tracked in the MERS system.  Thus, Plaintiffs really attack the notice, or lack thereof, to future buyers of mortgages in the MERS system.  **Any lack of notice in the public records, however, to future buyers of plaintiffs' mortgages does not alter Plaintiffs' obligations under the mortgages . . .** (emphasis added)[38]

Plaintiff does not cite to any law which would excuse her from making her mortgage payments. In making this argument, Plaintiff reveals the true intent of her lawsuit.  Plaintiff's claims must be dismissed.

### 4.    MERS Has Indisputable Statutory Authority To Foreclose

In Nevada, the instrument commonly used to secure a promissory note or mortgage given for a real property loan is a deed of trust.  The encumbered property is conveyed by the mortgagor (sometimes referred to in the deed of trust as the trustor, grantor or borrower) to the trustee, a title company, as security for repayment of the loan from the mortgagee (the beneficiary or lender). See N.R.S. § 107 (Deeds of Trust).  The default and sale provisions in a Nevada deed of trust are regulated by statute.  *See* N.R.S. § 107.080 (trustee's power of sale; required notices); § 107.090 (filing of notice of default and sale); § 21.130 (requirements of notice of sale). The language of the deed of trust itself "establishes the rights and responsibilities of the parties and prescribes certain duties to be performed by the trustees."[39]

The beneficiary of a deed of trust ordinarily has two means to enforce the security interest provided by the deed—judicial foreclosure or a trustee's sale.  The Nevada Supreme Court explained:

[D]eeds of trust fall within the meaning of NRS 40.430. Where a default has occurred, a beneficiary, under a deed of trust, can select the judicial process for foreclosure pursuant to

---

[38] *Cervantes v. Countrywide Home Loans*, 2009 U. S. Dist. LEXIS 87997, (D. Ariz.  Sept. 24, 2009) *32.

[39] *See Edwards v. John Hancock Mut. Life Ins. Co.*, 973 F.2d 1027, 1030-31 (1st Cir. 1992) (interpreting Nevada law). See also *Cervantes v. Countrywide Home Loans*, 2009 U.S. Dist. LEXIS 87997, (D. Nev. September 23, 2009)

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

NRS 40.430, or the procedure under NRS ch. 107, of foreclosure by a trustee's sale and then bring an action on the promissory note for any deficiency which may occur.

*Nevada Land & Mortgage Co. v. Hidden Wells Ranch*, 83 Nev. 501, 504 (1967) (citing to

*McMillan v. United Mortgage Company*, 82 Nev. 117, 412 P.2d 604 (1966)).

The legal framework governing those non-judicial foreclosures or trustee's sales is found in N.R.S. 107.80.   The statutory scheme specifically provides that the foreclosure process may be conducted by the "[t]he **trustee, or other person authorized to make the sale** under the terms of the trust deed or transfer in trust" and a person authorized to record the notice of default or the notice of sale includes "[t]he **beneficiary**, the **successor in interest** of the beneficiary or the **trustee**." NRS § 107.80 (emphasis added).

As expressly identified on the face of Plaintiff's Deeds of Trust, MERS is the nominee of the beneficiary of that instrument. As beneficiary – or even as an authorized agent[40] – MERS is granted indisputable authority under Nevada law to initiate the foreclosure process.[41]

---

[40]     ". . . [A]s a matter of law a subsequent holder ratifies a prior holder's assignment of nominees and trustees on a corresponding deed of trust by silence. This result would make sense because "the mortgage goes with the note." *Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz. App.1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)). This has been the law in California since before the Civil War. *Ord v. McKee*, 5 Cal. 515, 515 (1855) ("A mortgage is a mere incident to the debt which it secures, and follows the transfer of the note with the full effect of a regular assignment."). **There does not seem to be any principle of law requiring a subsequent holder of a promissory note to re-execute an attendant security interest.** There is no claim or indication in the present case that the current holder of the note, if not Countrywide Bank, challenges the foreclosure…" "This deed of trust follows the note, and it is still in force." (See Judge Jones Order attached to Request for Judicial Notice )(emphasis added)

[41]     *See, Elias v. HomeEQ Servicing*, No. 08-1836, 2009 WL 481270, at *1 (D. Nev. Feb. 25, 2009) (recorded deeds of trust confirmed the standing of MERS as the nominee beneficiary to seek foreclosure); *Dunlap v. Mortgage Elec. Registration Sys., Inc.*, No. 2:08-cv-00918, slip op. at 1 (D. Nev. Jan. 5, 2009) (granting motions to dismiss filed by MERS and ReconTrust because MERS "does have standing and the authority to initiate foreclosure proceedings on the subject property under the language of the Deed of Trust"); *Ramos v. Mortgage Elec. Registration Sys., Inc.*, No. 2:08-CV-1089-ECJ-RJJ (D. Nev. Mar. 5, 2009) (rejecting as "without merit" the plaintiff's argument that MERS had no right to confer upon the trustee under a deed of trust the power to sell a property through non-judicial foreclosure; holding that "under the deed of trust, MERS was empowered to foreclose on the property and to appoint [another defendant] as substitute trustee for purpose of conducting the foreclosure"); *Khalil v. Fidelity Nat'l Default Solutions Tustin, et al.*, No. A560582, slip op. at 3 (Dist. Ct. Clark County Nov. 24, 2008) (finding that "MERS, as a lender's nominee and the named beneficiary [on the Deeds of Trust], has standing to foreclose on the Deeds of Trust"); See also, *Croce v. Trinity Mortgage Assur.*, Case No. 2-08-cv-01612-KJD (D. Nev. Sept. 28, 2009) ("Plaintiff has cited **no** authority that is controlling upon this Court that holds that MERS cannot have standing as a nominee beneficiary in connection with a nonjudicial foreclosure proceeding under Nevada law. This Court has previously determined that MERS does have such standing."; *Gonzalez v. Home American Mortgage Corp.*, No. 2:09-cv-00244, slip op. at 6 (D. Nev. Mar. 12, 2009) (upholding right of MERS, as the named beneficiary on the Deed of Trust, and ReconTrust, as successor trustee, to initiate non-judicial foreclosure without presenting the note; *Orzoff v. Mortgage Elec. Registration Sys.*, No. 08-01512, slip op. at 9-10 (D. Nev. Mar. 26, 2009)(Jones, J.) "Plaintiff has cited no

1        To support her proposition that MERS does not have standing to initiate nonjudicial

2 foreclosure proceedings, Plaintiff relies on a non-binding bankruptcy court opinion that deals with

3 standing to file a claim and to bring a motion to lift the automatic stay in bankruptcy court.  The

4 Opinion did NOT address non-judicial foreclosure. *See In re* Mitchell, Case No. BK-S-07-16226-

5 LBR.

6        The order Plaintiff cites in her Opposition does not apply to non-judicial foreclosures, but

7 rather applies only to the motions for relief from stay in front of the bankruptcy court in these

8 particular cases.  Indeed, Judge Dawson, the author of the opinion cited by Plaintiff, clearly stated,

9 **"[t]his holding is limited to the specific facts and procedural posture of the instant case."**

10 (*See Mortgage Electronic Registration Systems, Inc. v. Lisa Marie Chong, Leonard Schwartzer,*

11 *Bankruptcy Trustee, et. al.*, Case No. 2:09-cv-00661-KJD-LRL (Dec. 4, 2009), affirming *In re*

12 *Joshua and Stephanie Mitchell*, Case No. BK-S-07-16226-LBR (Aug. 19, 2008).)

13        This limiting language is consistent with other recent opinions by Judge Dawson and other

14 judges in Nevada.  Judge Dawson recently held that MERS does have standing to implement non-

15 judicial foreclosure proceedings under Nevada law on September 28, 2009 in *Croce v. Trinity*

16 *Mortgage Assur.*, Case No. 2-08-cv-01612-KJD (D. Nev. Sept. 28, 2009) ("Plaintiffs have cited

17 **no** authority that is controlling upon this Court that holds that MERS cannot have standing as a

18 nominee beneficiary in connection with a nonjudicial foreclosure proceeding under Nevada law.

19 This Court has previously determined that MERS does have such standing.")

20        In *Croce*, a case similar to the present action, Judge Kent J. Dawson specifically rejected

21 the plaintiff's theory that MERS does not have standing as beneficiary under the Note and Deed of

22 Trust and recognized that "[t]his Court has previously determined that **MERS does have such**

23 **standing**." *Croce*, 2009 U.S. Dist. LEXIS 89808 (citing *Orzoff v. MERS*, No. 2:08-cv-01512

24 (Mar. 26, 2009); *Dunlap v. MERS*, No. 2:08-cv-00918 (Jan. 5, 2009); and *Beltran v. MERS*, No.

25 2:08-cv-1101 (Jan. 5. 2009))(emphasis added).[42]

---

26 authority that is controlling upon this Court that holds that MERS cannot have standing as nominee

27 beneficiary in connection with a non judicial foreclosure proceeding under Nevada law."

28 [42] This Court has repeatedly issued decisions finding that MERS was a beneficiary of a deed of trust. *See*, *e.g.*, *Vazquez v. Aurora Loan Servs.*, No. 08-01800, slip. op. at 2-3 (D. Nev. April 21, 2009) (Jones, J.); *Orzoff v. Mortgage. Elec. Registration Sys.*, No. 08-015 12, slip. op. at 9-10 (D. Nev. Mar. 26, 2009)

**5.    Plaintiff Has Specifically Agreed and Acknowledged MERS' Authority To Foreclose**

Plaintiff also contractually acknowledged, by signing the Deed of Trust, that MERS is a proper party to foreclose on the loan.

On March 6, 2006, Plaintiff executed Deeds of Trust in connection with the financing of her property. MERS' identity as beneficiary under the deeds of trust was explicitly provided to plaintiff.  By signing the deeds of trust, Plaintiff specifically acknowledged MERS' authority to foreclose.

In Nevada, if the Deed of Trust contains an express provision granting a power of sale, the beneficiary may pursue non-judicial foreclosure.  The Deed of Trust in this case provides as follows:

> [Plaintiff] understands and agrees that MERS holds only legal title to the interests granted by [Plaintiff] in this Security Instrument, but, if necessary to comply with law or custom, **MERS (as nominee for Lender** or Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the **right to foreclose and sell the Property**...

Plaintiff has not alleged that MERS took improper steps in a foreclosure process, rather that it had no authority to take such steps in the first place. Based on the contractual assurances of authority, and the effect of the power of sale provision in the Deeds of Trust, Plaintiff unquestionably acknowledged MERS' true and actual authority to foreclose on her property should the borrower default on the payments under the Note.

**6.    Plaintiff Lacks Standing To Due To Her Failure To Tender**

Plaintiff does not deny that she is delinquent under the terms of the promissory note. Nowhere in the complaint does Plaintiff allege that she attempted or completed a tender of the undisputed amounts owed on the promissory note.

(Jones, J.); *Ramos v. Mortgage Elec. Registration Sys.*, No. 08-1089, slip. op. (D. Nev. Mar. 5, 2009) (Reed, J.); *Vera-Jaramillo v. Mortgage Elec. Registration Sys.*, No. 08-01734 (D. Nev. Mar. 2, 2009) (Hunt, C.J.), slip. op. at 2; *Elias v. HomEq Servicing*, No. 08-1836, 2009 WL 481270, at *1 (D. Nev. Feb. 25, 2009)(Mahan, J.); *Dunlap v. Mortgage. Elec.Registration Sys.*, No. 08-00918, slip. op. at 1 (D. Nev. Jan. 6,2009)(Jones, J.); *Beltran v. MERS*, No. 08-1 101, slip. op. (D. Nev. Jan. 5, 2009) (Jones, J.)

The "tender" rule states that if a borrower who has defaulted on her payments requests the Court to exercise its equitable powers to stop or set aside foreclosure proceedings, the borrower must first do equity itself.[43]

Without having "done equity" by tendering the obligation in full, Plaintiff lacks standing to stop a foreclosure sale or to quiet title in her name.

Courts have expanded the application of the tender rule to "any cause of action" that is based upon allegations of wrongful foreclosure or that seeks redress from foreclosure.[44]   In addition, the tender rule is strictly applied.[45]   Here, Plaintiff has not tendered, nor has she offered to tender, the undisputed amounts owing on her loan.  Without such a payment, she has no standing to challenge any future foreclosure sale as well as her implicitly integrated claims for declaratory and injunctive relief, fraud, and quiet title.

---

[43] *Kraemer v. Kraemer*, 79 Nev. 287, 382 P.2d 394 (1963) (recovery of property is denied where Plaintiffs was financially unable to redeem property despite evidence of fraud and procedural irregularities in foreclosure); *Arnolds Mgmt. Corp. v. Eishen*, 158 Cal. App. 3d 575, 577 (1984); *Shimpones v. Stickney*, 219 Cal. 637 (1934)( "[A] mortgagor cannot quiet her title against the mortgagee without paying the debt secured.")(holding that it was clearly erroneous to quiet title to Plaintiffs' property where Plaintiffs refused to do equity); *Summa Investing Corp. v. Resolution Trust Corp* ., 586 S.2nd 1278 (Fl. 3rd Dist. Ct. App. 1991)(failure to make a valid tender justifies foreclosure); *Hill v Filsoof*, 2005 WL 1176958 (Ga. Ct. App., 2005)(holding that neither fraud nor poverty constitute an equitable excuse for failure to tender a debt on a note secured by deed in order to prevent foreclosure); *Berry v. Government National Mortgage Assoc.*, 231 Ga. 503, 202 S.E. 2d 450(Ga. 1973)(holding that alleged poverty is not grounds for obtaining cancellation of a foreclosure where the mortgagor did not tender the amount due under the security deed and note).

[44] *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (in affirming sustaining of demurrer without leave to amend court explained that the tender rule applies to "any cause of action for irregularity in the sale procedure"); *United States Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1225 (1985) (affirming judgment of nonsuit); *Arnold Mgmt. Corp.*, 158 Cal. App. 3d at 579(affirming sustaining of demurrer without leave to amend on claims of wrongful foreclosure, fraud, and negligence relating to defective notice not foreclosure sale).

[45] *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003), and, absent an alleged and actual tender, the Complaint in its entirety fails to state a cause of action.  *Karlsen v. Am. Sav. & Loan Ass'n.*, 15 Cal. App. 3d 112 (1971); *Abdallah*, 43 Cal. App. 4th at 1109; Miller & Star, *Cal. Real Estate* (3d ed.), Deeds of Trust, § 10:212, pp. 653-54.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

444762

## IV.  CONCLUSION

Based on the foregoing, Defendants request dismissal of Plaintiff's complaint pursuant to FRCP 9(b) and 12(b)(6).

DATED this 22 day of February, 2010.

LEWIS AND ROCA LLP

By _____
J. CHRISTOPHER JORGENSEN, ESQ.
STATE BAR NO. 5382
DIANA S. ERB, ESQ.
STATE BAR NO. 10580
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV  89169
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing document was made on the 22 day of February, 2010 by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada, to the following:

Edward G. Marshall, Esq.
324 So. Third Street, #2
Las Vegas, NV 89101
Attorney for Plaintiff

_____
an employee of Lewis and Roca LLP